IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAC SURGICAL PARTNERS, P.A., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-1355 |
| UNITED HEALTHCARE SERVICES, INC., *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Stay and Compel Arbitration As To Certain Plaintiffs ("Motion to Compel Arbitration") [Doc. # 19] filed by Defendants United Healthcare Services, Inc. ("United") and Ingenix, Inc., to which Plaintiffs filed a Response [Doc. # 27], Defendants filed a Reply [Doc. # 29], and Plaintiffs filed a Sur-Reply [Doc. # 30]. Based on the Court's review of the record and the application of governing legal authorities, the Court **denies** the Motion to Compel Arbitration.

### I.   BACKGROUND

Each Plaintiff is a Texas professional association wholly-owned by a doctor (referred to herein as "Doctor" or "Owner-Doctor") whose specialty requires them to

perform out-patient surgeries on a regular basis. Frequently, the Doctors will perform the surgeries at an ambulatory surgical center ("ASC") rather than in a hospital.

Each Plaintiff entered into an Ambulatory Surgical Center Use Agreement ("Use Agreement") with The Palladium for Surgery – Houston, L.L.P. ("Palladium"), a licensed ASC operator. Pursuant to the Use Agreement, Palladium granted the Doctor the right to perform out-patient surgery at Palladium's ASC facility in exchange for a fee. The Owner-Doctors of most Plaintiffs signed a network participation agreement ("Par Agreement") with United. Some of the Par Agreements provided that the agreement applies to the Doctors and the services they provide "in all of [their] practice agreements" and required binding arbitration. A second group of Par Agreements provided that unresolved disputes regarding the parties' "business relationship" would be submitted to binding arbitration.

Plaintiffs submitted health insurance claims to United (and other insurance companies) for reimbursement for the facility fee charged by Palladium. For many years United paid the claims. Beginning in late 2009, United sent each Plaintiff an "Overpayment Demand" letter contending that United had overpaid Plaintiffs because Plaintiffs were not entitled to the facility fee. In addition to seeking repayment of the previously paid facility fees, United stopped paying facility fees to Plaintiffs. It is United's position that the "facility fees" are part of an illegal kickback scheme

involving the Doctors and Palladium in which the Doctors unlawfully split facility fees with and received kickbacks from Palladium.

Plaintiffs filed this lawsuit, asserting claims for negligent misrepresentation, breach of an "implied-in-fact" contract, violations of the Texas Insurance Code, quantum meruit, and promissory estoppel. Defendants then filed their Motion to Compel Arbitration as to Plaintiffs whose Owner-Doctor signed a Par Agreement containing a mandatory arbitration provision.[1] Plaintiffs oppose the Motion to Compel Arbitration, noting that they are not parties to any arbitration agreement, because the Owner-Doctors, not Plaintiffs, signed the Par Agreements. The Motion to Compel Arbitration has been fully briefed and is ripe for decision.

## II.  ANALYSIS

"Arbitration is 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *PaineWebber Inc. v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001) (quoting *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Therefore, arbitration is fundamentally a matter of contract and the Court must first determine whether there is a valid agreement between the parties to arbitrate

---

[1]  As to some Plaintiffs, either the Owner-Doctor did not sign a Par Agreement or United is unable to locate such an agreement. United does not seek to arbitrate the case as to those Plaintiffs.

their dispute. *See Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S. Ct. 2772, 2776 (2010); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). "Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citations omitted). In deciding whether the parties entered into a valid agreement to arbitrate, the Court applies general contract principles. *Id.*

It is undisputed that Plaintiffs did not sign either form of the Par Agreements. In most cases, Plaintiffs were not in existence when their Owner-Doctors signed the Par Agreements. Neither form of the Par Agreements provides specifically that the agreements and their mandatory arbitration provision applies to Plaintiffs, by name or description. The Par Agreements that provide that they apply to the Doctors and "the services" those Doctors provide in all their practice arrangements do not state that the Par Agreement and its arbitration provision applies to all the Doctor's practice arrangements; these Par Agreements provide only that the terms of the agreement apply to ***the services*** the Doctor – the party to the Par Agreement – provides through all practice arrangements. Similarly, the Par Agreements that provide that unresolved disputes regarding the parties' "business relationship" must be submitted to arbitration

identify the disputes that must be arbitrated, but these agreements do not include other entities such as Plaintiffs as parties bound by the agreement. As a result, the unambiguous language of the Par Agreements does not support requiring non-signatory Plaintiffs to submit their dispute with United to binding arbitration.

United argues that Plaintiffs are subject to the mandatory arbitration provisions in the Par Agreements because they received benefits under the Par Agreements. "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 517-18 (5th Cir. 2006)). A non-signatory can "embrace" a contract that includes an arbitration provision by either "knowingly seeking and obtaining 'direct benefits' from that contract" or "seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.*

In this case, there is no evidence that Plaintiffs sought and obtained direct benefits under the Par Agreements. Plaintiffs clearly allege that they received benefits from United prior to its decision to stop paying facility fees, but there is no evidence that those benefits were paid pursuant to the Par Agreements. Indeed, Plaintiffs have

presented evidence that the Doctors billed United for the physician fees as "in-network" under a Par Agreement using their personal tax identification number. *See* Declaration of Gregory L. Mangum [Doc. # 31], ¶ 5. In contrast, each Plaintiff, not its Owner-Doctor, billed United for the disputed facility fees as "out-of-network" charges using the professional association's tax identification number because Plaintiffs did not have a network Par Agreement with United. *See id.*, ¶ 6.

Similarly, United has not shown that Plaintiffs have sought to enforce any terms of the Par Agreements. Plaintiffs assert a breach of contract claim based on an "implied-in-fact contract with United . . . ." *See* First Amended Complaint [Doc. # 15], ¶ 65. Absent evidence that Plaintiffs knowingly obtained "direct benefits" from the Par Agreements or are seeking to enforce terms in the Par Agreements, direct benefit estoppel does not apply to bind Plaintiffs to the mandatory arbitration provisions in the Par Agreements.

United argues also that Plaintiffs are subject to the mandatory arbitration provisions in the Par Agreements under an alter ego theory. "Courts do not lightly pierce the corporate veil even in deference to the strong policy favoring arbitration." *Bridas S.A.P.I.C. v. Gov't. of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003) (quoting *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1461 (10th Cir. 1995)). Indeed, the Court may compel a non-signatory to submit its claim to binding

arbitration under an alter ego theory "only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue *and* (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.* (emphasis added).  In this case, United has not presented evidence that the Doctors exercised control over their professional associations in order to defraud United.  As a result, the Court will not pierce the corporate veil in order to require non-signatory Plaintiffs to submit to binding arbitration based on agreements entered into between the owner-Doctors and United.

### III.   CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motion to Compel Arbitration [Doc. # 19] is **DENIED**.

SIGNED at Houston, Texas, this **10th** day of **August, 2011**.

_____
Nancy F. Atlas
United States District Judge