IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAC SURGICAL PARTNERS, P.A., *et al.*, § § | | |
| Plaintiffs, § § | | |
| v. § § | | CIVIL ACTION NO. H-11-1355 |
| UNITED HEALTHCARE SERVICES, INC., *et al.*, § § § | | |
| Defendants. § | | |

# **MEMORANDUM AND ORDER**

This case is before the Court on the Motion to Dismiss [Doc. # 20] filed by Defendants United Healthcare Services, Inc. ("United") and Ingenix, Inc., to which Plaintiffs filed a Response [Doc. # 32], and Defendants filed a Reply [Doc. # 34]. Also pending is Plaintiffs' Motion to Strike Exhibits Attached to Defendants' Motion to Dismiss ("Motion to Strike") [Doc. # 33] and Supplemental Motion to Strike [Doc. # 36], to which Defendants filed a Response [Doc. # 37], Plaintiffs filed a Reply [Doc. # 40], and Defendants filed a Sur-Reply [Doc. # 42]. Based on the Court's review of the record and the application of governing legal authorities, the Court **denies** the Motion to Strike and **denies in part and grants in part** the Motion to Dismiss.

**I.     BACKGROUND**

Each Plaintiff is a Texas professional association wholly-owned by a doctor (referred to herein as "Doctor" or "Owner-Doctor") whose specialty requires them to perform out-patient surgeries on a regular basis.  Frequently, the Doctors will perform the surgeries at an ambulatory surgical center ("ASC") rather than in a hospital.

Each Plaintiff entered into an Ambulatory Surgical Center Use Agreement ("Use Agreement") with The Palladium for Surgery – Houston, L.L.P. ("Palladium"), a licensed ASC operator.  Pursuant to the Use Agreement, Palladium granted the Doctor the right to perform out-patient surgery at Palladium's ASC facility in exchange for a fee.  The Owner-Doctors of most Plaintiffs signed a network participation agreement ("Par Agreement") with United, but the actual Plaintiffs are not parties to any Par Agreement with United.

Plaintiffs submitted health insurance claims to United (and other insurance companies) for reimbursement for the facility fee charged by Palladium.  For many years, United paid the claims.  Beginning in late 2009, United sent each Plaintiff an "Overpayment Demand" letter ("Demand Letter") contending that United had overpaid Plaintiffs because Plaintiffs were not entitled to the facility fee because they do not qualify as licensed ASCs under Texas law.  In addition to seeking repayment

of the previously paid facility fees, United stopped paying facility fees to Plaintiffs. It is United's position that the "facility fees" are part of an illegal kickback scheme involving the Doctors and Palladium in which the Doctors unlawfully split facility fees with and received kickbacks from Palladium.

Plaintiffs filed this lawsuit, asserting claims for negligent misrepresentation, breach of an "implied-in-fact" contract, violations of the Texas Insurance Code, quantum meruit, and promissory estoppel. Defendants then filed their Motion to Dismiss, asserting that Plaintiffs' claims are preempted by the Employee Retirement Income Security Act ("ERISA") and, if not preempted, because Plaintiffs fail to state a claim upon which relief can be granted. Plaintiffs oppose the Motion to Dismiss and ask the Court to strike the exhibits attached to Defendants' Motion to Dismiss. The two motions have been fully briefed and are ripe for decision.

## II.   MOTION TO STRIKE

In the Motion to Strike, Plaintiffs ask the Court to strike the Demand Letters and the declaration of Stacy A. Chalupsky dated June 13, 2011 ("Chalupsky Declaration"), attached as exhibits to the Motion to Dismiss. In the Supplemental Motion to Dismiss, Plaintiffs ask the Court to strike the bills they submitted to United, attached as an exhibit to Defendants' Reply in support of their Motion to Dismiss.

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. These are generally documents whose authenticity is not questioned.

It is clear that the Demand Letters and the bills are referred to by description in the First Amended Complaint. For example, in paragraph 45, Plaintiffs allege that they submitted bills to United that included charges for facility fees. Additionally, in Section C of the First Amended Complaint, containing paragraphs 52-54, Plaintiffs allege again that they submitted bills to United that included facility fees. In Paragraph 55 of the First Amended Complaint, Plaintiffs allege that United sent them the Demand Letters. The claims in the lawsuit are based in part on Plaintiffs' submission of bills to United that United refused to pay and on United sending the

Demand Letters seeking repayment of the facility fees previously paid to Plaintiffs. As a result, the Demand Letters and the bills are referred to in Plaintiffs' First Amended Complaint and are central to their claims in this lawsuit. Indeed, had United continued to pay Plaintiffs' bills, including the facility fees, and had not demanded repayment for the facility fees previously paid, Plaintiffs would have no damages and, therefore, no claims for relief. The Motion to Strike as to the Demand Letters and the bills is denied.

The Chalupsky Declaration is relevant only to Defendants' argument that Plaintiffs' state law claims are preempted by ERISA. Although not decided by courts in this federal circuit, other courts have held that the Court "is not bound by the four corners of Plaintiff's complaint" and may consider other evidence in deciding whether state law claims are preempted by ERISA. *In re Managed Care Litig.*, 2009 WL 855967, *5 (S.D. Fla. Mar. 30, 2009); *see also Bolssen v. Unum Life Ins. Co. of Am.*, 629 F. Supp. 2d 878, 882 (E.D. Wis. 2009). The Court finds this legal authority persuasive and denies the Motion to Strike as to the Chalupsky Declaration.

### III.  **MOTION TO DISMISS - ERISA PREEMPTION**

Defendants argue that the Court should dismiss Plaintiffs' state law claims because most of the insurance policies issued by United are ERISA plans and, therefore, ERISA preempts Plaintiffs' claims. In support of the argument, Defendants

submit the Chalupsky Declaration. Chalupsky states that thus far she has identified 987 claims submitted to United for facility fee charges incurred at Palladium with one of the Plaintiffs as the party to be paid. Chalupsky states that there are 287 ERISA-governed plans that cover 820 of the 987 claims. Chalupsky does not identify which Plaintiffs are included in the results of her investigation to date, nor does she identify which claims are purportedly governed by ERISA. Instead, Chalupsky in her Declaration states basically that 820 unidentified claims, from a total of 987 unidentified claims, were filed for payment for services rendered to a participant in an ERISA plan. The Court declines to dismiss claims generically based on summary or conclusory comments without specific evidence, as is provided by the Chalupsky Declaration. Plaintiffs are entitled to see and test thoroughly the back-up documentation and analysis for Chalupsky's conclusions.

Moreover, a state law claim is preempted by ERISA (1) "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 418 (5th Cir. 2008) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). In this case, Plaintiffs maintain unequivocally that they are not seeking damages "as an assignee of benefits under an insurance plan" – ERISA or otherwise. *See* First Amended

Complaint, ¶ 59. Plaintiffs assert that their claims are not based on the insurance plans between United and its insureds, but is based instead on United's separate and independent promise to pay Plaintiffs for the facility fees in accordance with United's fee schedule. *See id.* Plaintiffs assert specifically that they are not claiming that "United is liable for failure to pay pursuant to the terms of an insurance policy" but are, instead, basing their claims for damages on United's representation that the facility fees were authorized and that United would be compensated by United for the medical services they provided, including the related facility fees. *See id.* Because Plaintiffs affirmatively assert that they are not pursuing any claims based on an assignment of benefits and otherwise have no connection to an ERISA plan, Plaintiffs are not parties that could bring an independent claim under ERISA § 502(a)(1)(B).[1]

The Court notes also that the dispute in this case does not rely on a legal duty created by ERISA. Defendants in the Demand Letters did not base the refusal to pay Plaintiffs for the facility fees on any provision of any ERISA plan. Instead, Defendants relied exclusively on independent provisions of Texas law that govern

---

[1] Section 502(a)(1)(B) allows a plan participant or beneficiary to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs have represented to the Court that they are not suing based on an assignment of benefits from an ERISA plan participant or beneficiary, and the Court has relied on that representation to hold that Plaintiffs could not have asserted an ERISA claim pursuant to § 502(a)(1)(B).

ASCs. Whether Plaintiffs are entitled to recover in this case will depend on the interpretation of Texas state law, not on an analysis of whether an ERISA plan provides coverage.

Plaintiffs could not have brought their claims under ERISA § 502(a)(1)(B) and the legal duty at issue in this case is not one implicated by ERISA, but one allegedly created by Texas state laws that govern ASC licensing. As a result, Plaintiffs' claims are not preempted by ERISA.

## IV. MOTION TO DISMISS - FAILURE TO STATE A CLAIM

### A. Standard for Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id.* The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950.

### B.     Negligent Misrepresentation Claim

"Negligent misrepresentation requires proof that: (1) the defendant in the course of his business or a transaction in which he had an interest; (2) supplied false information for the guidance of others; (3) without exercising reasonable care or competence in communicating the information; (4) the plaintiff justifiably relied on the information; (5) proximately causing the plaintiff's injury." *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex. App. -- Dallas 2007, no pet.); *see also In Re Stonebridge Techs., Inc.*, 430 F.3d 260, 267 n.4 (5th Cir. 2005).  Defendants argue that Plaintiffs have failed to allege that Defendants supplied false information and that the negligent misrepresentation claim fails because there exists a written contract.

Plaintiffs have alleged that Defendants preauthorized medical services and treatment, including use of the facility in which the treatment would be performed. *See* First Amended Complaint, ¶ 48.  Plaintiffs alleged also that the medical services, including the facility fees, were authorized and subject to payment in accordance with United's fee schedule.  *See id.*, ¶¶ 47, 54, 61.  These allegations satisfy the requirement that Plaintiffs allege that Defendants supplied false information regarding existing facts.

Defendants' argument that the negligent misrepresentation claim should be dismissed because there is a valid, written contract between the parties fails because no Plaintiff is a party to a written contract with Defendants, and Plaintiffs allege and maintain that they are not suing as assignees of the insureds' contract with Defendants. Moreover, the terms of the contracts between Defendants and its insured was not relied upon by Defendants in their Demand Letters advising Plaintiffs that the facility fees would no longer be paid and demanding repayment for facility fees paid to Plaintiffs in the past. There is no written contract between the parties that governs the ultimate issue in this case – whether Plaintiffs satisfy the requirements of Texas state law to qualify as ASCs. The Court denies the Motion to Dismiss the negligent misrepresentation claim.

### C.     Breach of "Implied-in-Fact" Contract

The elements of a breach of contract claim are the same, whether the alleged contract is express or implied. *See Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App. – Houston [1st Dist.] 2009, review denied). In order to state a breach of contract claim based on an "implied-in-fact" contract, a plaintiff must allege the existence of a contract, the performance or tender of performance by the plaintiff, a breach by the defendant, and damages resulting from that breach. *Bridgmon v. Array Sys. Corp.*,

325 F.3d 572, 577 (5th Cir. 2003) (citing *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App. – Houston [14th Dist.] 2000, no pet.)).

Plaintiffs allege that Defendants represented that they would compensate Plaintiffs in exchange for Plaintiffs providing medical services, and for the associated facility fees. *See* First Amended Complaint, ¶ 50. These allegations, if proven, would establish the existence of a contract. Plaintiffs also allege that the course of dealings between the parties created a contract between them. *See id.*, ¶ 46. Plaintiffs allege that the terms of the implied-in-fact contract included United's fee schedule that identified the maximum allowable facility fee associated with each medical procedure and service rendered by Plaintiffs. *See id.*, ¶ 53. Plaintiffs allege that they performed their contractual obligations by rendering the medical services in an appropriate facility, and that Defendants breached their contractual obligation to pay for those services, including the facility fee. *See id.*, ¶ 66. Plaintiffs allege that they suffered damages as a result of Defendants' breach. *See id.*, ¶ 67. These factual allegations satisfy the pleading requirements for a breach of contract claim based on an implied-in-fact contract and, as a result, the Motion to Dismiss this claim is denied.

### D. **Texas Insurance Code Claims**

Plaintiffs allege that Defendants violated Chapter 541 of the Texas Insurance Code, based on Defendants' alleged violation of the Texas Deceptive Trade Practices

Act ("DTPA") sections 17.46(b)(2) and 17.46(b)(5). Defendants argue, and Plaintiffs do not meaningfully dispute, that these two sections require that Plaintiffs qualify as a "consumer" as defined by the Texas DTPA. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387 (Tex. 2000) (§ 17.46(b)(5)); *Danny Darby Real Estate, Inc. v. Jacobs*, 760 S.W.2d 711, 716 (Tex. App. – Dallas 1988], writ denied) (§ 17.46(b)(2)). As a result, Defendants are entitled to dismissal of the Texas Insurance Code Claims because it is uncontested that Plaintiffs do not qualify as consumers for purposes of the Texas DTPA.

Plaintiffs, however, have requested leave to amend their complaint to assert a claim under the Texas Insurance Code based on § 17.46(b)(12) of the DTPA, which does not require consumer status. *See* Response [Doc. # 32], fn. 6; *Casteel*, 22 S.W.3d at 387. The case is in the very early stages. Indeed, the Court has not yet entered a docket control order and the liberal amendment provisions of Rule 15(a) of the Federal Rules of Civil Procedure apply. Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires," FED. R. CIV. P. 15(a), and "evinces a bias in favor of granting leave to amend." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). As a result, the Court concludes that leave to amend to assert a claim under § 17.46(b)(12) should be granted.

### E. Quantum Meruit Claim

To state a claim of quantum meruit, a plaintiff must allege facts supporting each of the following elements:

(1) that the plaintiff rendered valuable services or furnished materials;
(2) that the services rendered or materials furnished were undertaken for the person or entity sought to be charged;
(3) and that the person or entity sought to be charged accepted and enjoyed the services or materials;
(4) under such circumstances as reasonably notified the person or entity sought to be charged that the plaintiff, in performing the services or providing the materials, expected to be paid by the person or entity sought to be charged.

*C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 792 (Tex. App. – Houston [1st Dist.] 2004, no pet.) (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990)). "Quantum meruit is based on a promise implied by law to pay for beneficial services rendered and knowingly accepted." *Id.* at 792-93 (citing *Air Conditioning, Inc. v. L.E. Travis & Sons, Inc.*, 578 S.W.2d 554, 556 (Tex. Civ. App. – Austin 1979, no writ)).

Defendants argue that Plaintiffs fail to allege that services were rendered for the person or entity sought to be charged. Plaintiffs allege specifically, however, that "Plaintiffs provided valuable services to United and United's insureds" by providing services that "discharged United's contractual obligation to facilitate health care for the insureds that pay premiums to United." *See* First Amended Complaint, ¶¶ 73-74.

Although United contests the accuracy of these allegations and whether they are "grounded in common sense," it is clear that Plaintiffs allege that Plaintiffs provided valuable services to United. Defendants' citation to *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, *20 (E.D. Tex. 2011), is unpersuasive. In that case, the district court stated specifically that the plaintiff "has not alleged that any services were provided specifically for the Defendants." *Id.* Whether or not that statement is accurate, it was the view of the district court when making its ruling on the motion to dismiss the quantum meruit claim. In this case, however, Plaintiffs clearly allege that they provided valuable services to United and, as a result, have alleged each element of the claim. Whether Plaintiffs can prove the allegations is an issue to be resolved following the completion of discovery.

### F. Promissory Estoppel Claim

"The elements of a promissory estoppel claim are: (1) a promise; (2) reliance thereon that was foreseeable to the promisor; and (3) substantial reliance by the promisee to his detriment." *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 378-79 (Tex. App.-- Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer,* 660 S.W.2d 521, 524 (Tex. 1983)). A fourth element – that "injustice can be avoided only by the enforcement of the promise" – is sometimes added. *See Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999). The fourth element is not listed by most

Texas courts in connection with the elements of a promissory estoppel claim, and is not necessarily a pleading element, but an element of estoppel that must be found in order for the promise to be specifically enforced.  *See id.* at 864 n.11.

In this case, Plaintiffs allege that Defendants promised to reimburse them for their work and for the facility fees, that reliance was foreseeable because United had paid Plaintiffs for hundreds of surgeries and associated facility fees in the past, and that Plaintiffs provided the medical services in reliance on United's promises to pay. *See* First Amended Complaint, ¶¶ 76, 46, and 51.  These allegations, even if United contends they defy logic, adequately state the three required elements of a promissory estoppel claim.  If Plaintiffs are ultimately able to prove these allegations, justice would require enforcement of the promises in order to prevent Defendants from obtaining services from Plaintiffs based on promises to pay which Defendants later refuse to honor.

Defendants argue also that the Court should dismiss Plaintiffs' promissory estoppel claim because written insurance contracts are in place between United and its insureds, and Plaintiffs accepted assignment of benefits from the insureds.  In support of this argument, Defendants cite cases that hold that a valid contract between the parties precludes a promissory estoppel claim.  It is undisputed in this case that there is no written contract between Plaintiffs and Defendants.  Moreover, as is

discussed above, Plaintiffs are not suing as the assignees of the insureds under insurance contracts between Defendants and the insureds. Similarly, as is discussed above, the terms of the written insurance plans between Defendants and their insureds do not govern the outcome of this case because Defendants based the denial of Plaintiffs' claims for facility fees not on the terms of an insurance contract with their insureds, but on Defendants' position that Plaintiffs were violating Texas state law by charging facility fees without qualifying as licensed ASCs.

Plaintiffs have alleged each of the three elements of a promissory estoppel claim under Texas law and have alleged facts which, if proven, could readily lead to a finding that justice requires enforcement of the promises to pay. As a result, the Court denies Defendants' Motion to Dismiss the promissory estoppel claim.

## V.  CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that the exhibits to Defendants' Motion to Dismiss are properly before the Court for consideration. The Court concludes also that Plaintiffs' state law claims are not preempted by ERISA and that, with the exception of the Texas Insurance Code claims, Plaintiffs have adequately pleaded each element of the asserted state law claims. Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion to Strike [Doc. # 33] is **DENIED**. It is further

**ORDERED** that Defendants' Motion to Dismiss [Doc. # 20] is **DENIED** as to the ERISA preemption argument, **DENIED** as to the quantum meruit, promissory estoppel, negligent misrepresentation, and breach of "implied-in-fact" contract claims, and **GRANTED** as to the Texas Insurance Code claims. It is further

**ORDERED** that Plaintiffs are granted leave to file a Second Amended Complaint consistent with this Memorandum and Order by **September 19, 2011**.

SIGNED at Houston, Texas, this **30th** day of **September, 2011**.

Nancy F. Atlas
United States District Judge