UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAC SURGICAL PARTNERS P.A., *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:11-CV-1355 |
| UNITED HEALTHCARE SERVICES, INC., *et al*, | § § § § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is the Order granting the Counter-Defendants' Motion to Quash, Motion for Protective Order, and Objections to United's Subpoenas to Mark Panzer P.C., Thrasher & Associates, P.C., and Margolis, Phipps & Wright P.C., and Weaver and Tidwell, LLP filed by Magistrate Judge Stacy (Doc. 281), Defendants'/Counter-Plaintiffs' Objections (Doc. 290), and Plaintiffs'/Counter-Defendants' Response thereto (Doc . 321). Upon review and consideration of the Order, the objections, and the response thereto, the relevant legal authority, and for the reasons stated below, the Court concludes that the objections are sustained, the Magistrate Judge's Order is vacated, and the Motion to Quash, Motion for Protective Order, and Objections to United's Subpoena is denied.

I.   **Background**

In this action thirty-seven plaintiffs ("DAC Plaintiffs"), all Texas professional associations, limited liability partnerships, or limited liability companies owned by doctors and surgeons, sued United Healthcare Services, Inc. and Ingenix, Inc.

(collectively, "United") seeking more than $15 million in reimbursement for alleged ambulatory surgical center ("ASC") facility fees. As explained in the Court's order granting United's motion to consolidate, the DAC Plaintiffs entered into use agreements with Palladium for Surgery-Houston, LLP ("Palladium"), an ASC operator, to perform outpatient surgical procedures at Palladium's facility in exchange for a fee. Pl.'s Fourth Am. Compl. ¶ 45 (Doc. 140). For several years, United compensated the DAC Plaintiffs for both physician fees and a facility fees for hundreds of surgeries and medical treatments performed at Palladium. Doc. 140 ¶ 49–50.

In late 2009, however, United sent each DAC Plaintiff an "Overpayment Demand" letter, contending that Texas law required each DAC Plaintiff to maintain its own separate ASC license and, because they did not, they were never entitled to compensation for facility fees. Doc. 140 ¶ 58. Thus, United stopped paying such claims, including pending claims totaling over $10 million, and sought repayment of the facility fees for which United had previously provided compensation. Doc. 140 ¶¶ 58-59. Additionally, United allegedly underpaid other claims totaling approximately $10 million. Doc. 140 ¶ 60. As a result, the DAC Plaintiffs filed the instant lawsuit, asserting the following causes of action: negligent misrepresentation; breach of implied-in-fact contract; Texas Insurance Code violations; quantum meruit; unjust enrichment; and promissory estoppel. Doc. 140 ¶¶ 64-94.

United answered (Doc. 60) and asserted counterclaims (Doc. 141) against the DAC Plaintiffs and against the doctors and surgeons who owned the DAC entities (the "Doctor Owners") in their individual capacity. According to United's counterclaims, the DAC Plaintiffs were formed by the Doctor Owners and Palladium as "Shell Companies"

in an effort to facilitate a fraudulent kickback scheme whereby Palladium allowed the Doctor Owners to profit at least 50% of the facility fees from procedures performed at its facility in order to induced the Doctor Owners to use Palladium as opposed to other ASCs.  United's First Am. Countercl. ¶ 92–93 (Doc. 316).  United claims that the DAC Plaintiffs "are not healthcare facilities, nor do they provide any type of healthcare service," but were "formed for the sole purpose of collecting kickbacks that Palladium funneled to the Doctor Owners through the Shell Companies in exchange for patient referrals."  Doc. 316 ¶ 2.  United claims that it was fraudulently induced to pay facility fees for procedures performed at Palladium by material misrepresentations and omissions in the bills submitted to it including: "(a) that the Shell Companies were collecting facility fees on their own behalf; (b) the fact that the facility fees were the product of unlawful kickback and fee-splitting arrangements; (c) that the actual charges for the facility services were significantly less than the amount represented on the bills because at least 50% of the facility fees paid by payors, including United, was retained by the Shell Companies and Doctor Owners as kickbacks and was not reimbursement paid to Palladium for proving the facility fees."  Doc 316 ¶ 93.  United claims that as a result of these misrepresentations and omissions, it was induced to pay more than $19 million in fraudulent facility fees.  Doc. 316 ¶¶ 217.  In its counterclaims, United asserts the following causes of action against the DAC Plaintiffs and the Doctor Owners: common law fraud; money had and received; and declaratory judgment that United is not responsible for any of the pending charges for facility fees for services provided at Palladium.  Doc. 316 ¶¶ 214–231.

**II.     The Doctors' Motion to Quash Accountant Subpoenas and Judge Stacy's Order**

On May 7, 2013, Counter-Defendants Dr. Sherman Nagler, Dr. David Jenson, Dr. James Liu, and Dr. Robert J. Moore filed a motion to quash, motion for protective order, and objections to United's document production subpoenas to the Doctor Owners' accountants Mark S. Panzer P.C., Thrasher & Associates, P.C., Margolis, Phipps & Wright P.C. and Weaver and Tidwell, LLP (Doc. 262).  The subpoenas requested eleven categories of documents encompassing: (1) bank records; (2) accounting records; (3) tax returns; (4) and reportable income records for both the DAC Plaintiffs and the Doctor Owners.  *See* Subpoena to Produc. Docs. (Doc. 262, Ex. A).  The Doctor Owners objected to the subpoenas on grounds that (1) the subpoenas are not reasonably calculated to lead to the discovery of admissible evidence; (2) the Magistrate Court already determined that the W-2s and 1099s were not discoverable; (3) the subpoenas are unduly burdensome; and (4) absent an agreement or court order, the accountants' disclosure of the documents is prohibited by both the Internal Revenue Code and the Texas Occupations Code, which restrict the disclosure of information received by an accounting firm from a tax client.  Doc. 262.  The Doctor Owners requested in the alternative that if the Court did not quash the subpoenas in their entirety, the Court issue a protective order limiting the scope of the requests.  Doc. 262 at 10.

On June 12, 2013, Magistrate Judge Stacy issued her order granting the Doctor Owners' motion to quash the subpoenas in their entirety.  June 12 Order (Doc. 281).  In her order, Magistrate Judge Stacy held that the subpoenas would reach financial

"documents relating to the Doctor Owners Individually" and not "solely those documents relating to the Plaintiffs/Counter-Defendants," and were therefore "overbroad." Doc. 281 at 2. Judge Stacy found that "with regard to any document requests of W-2s and 1099s, this Court had already sustained Plaintiffs'/Counter-Defendants' objections for similar requests." Doc. 281 at 2.

### III. United's Objections to Judge Stacy's Order

United filed its Rule 72(a) objections to Magistrate Judge Stacy's Order on June 28, 2013. United claims that the June 12 Order was erroneous and must be reversed for the following reasons: (1) the Counter-Defendants did not have standing to object to the "burden" of a subpoena that is not directed at them; (2) the subpoenas sought records of fraudulent financial transactions which are critical to the case and therefore not overbroad; (3) Judge Stacy's prior ruling regarding requests for W-2s and 1099s from the DAC Plaintiffs through party discovery should not have automatically barred confirmatory third party subpoenas or separate requests for the Doctor Owners' W-2s, 1099s, and/or K-1s; and (4) even if the subpoenas were overbroad, the Magistrate Judge should have limited their scope rather than quashing them in their entirety. United's Rule 72(a) Objections at 5–6 (Doc. 290).

According to United, the DAC Plaintiffs' discovery responses have been grossly deficient and the Doctor Owners have produced virtually no responsive documents whatsoever. Doc. 290 at 3–4. United avers that they are entitled to use third party subpoenas to test the veracity of the DAC Plaintiffs' representation that all relevant information was produced in an alternative form. Doc. 290 at 12. United claims that the

subpoenaed documents are relevant to show: (1) whether the Shell Companies actually provided facility services; (2) how the parties characterized the transactions that United claims were kickbacks and whether the Shell Companies are alter-egos of the Doctor Owners; (3) the motive for the Doctor Owners to participate in the alleged illegal kickback arrangement (i.e., how lucrative was the scheme and how significant it was to the Doctor Owners' income); and (4) whether and what punitive damages are recoverable from the Doctor Owners. Doc. 290 at 7.

The Doctor Owners responded to United's objections and argued that they did have standing to quash the subpoenas based on the personal information sought. Doctors' Resp. to United's Objections at 4 (Doc. 321). They emphasized that the Court sustained prior objections to requests for W-2s and 1099s, and that the requests extended to documents and records related to the accountants' work for the Doctor Owners' private practices and their and their spouses' personal finances. Doc. 321 at 1–2. Additionally, they argued that since United has not yet pled the elements of alter ego liability as to the Doctor Owners, the subpoenas are not "reasonably calculated to lead to admissible evidence." Doc. 321 at 5. They also argued that the subpoena requests are overbroad, as they seek records dating back to January 1, 2003, even though the earliest DAC Plaintiff did not begin operating at Palladium until the fall of 2004. Doc. 321 at 2. Finally, they argued that the subpoenas could not be modified, and Judge Stacy properly quashed them, rather than restricting their scope. Doc. 321 at 7–8.

## IV. Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1)(A), "[a] judge of the court may reconsider any pretrial matter…where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *See also Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995) (stating that the scope of review of a magistrate judge's findings in a non-dispositive pretrial motion is "the clearly erroneous standard"). "The magistrate judge's legal conclusions are freely reviewable. The district judge applies a *de novo* standard, and reverses if the magistrate judge erred in some respect in her legal conclusions." *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D. Tex. 1996) (citation omitted).

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…" FED. R. CIV. P. 26(b)(1). While the Federal Rules of Procedure do not define "relevant," courts turn to the definition in Federal Rule of Evidence 401: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (citations omitted). The party resisting discovery bears the burden to clarify and explain its objections and to provide support for those objections. *Id.* at 470–71 (citing *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kansas 1999) ("When the discovery sought

appears relevant, the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.").

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas, and provides that on timely motion, the issuing court must quash or modify a subpoena if it requests disclosure of privileged or other protected matter. FED. R. CIV. P. 45(c)(3) "A motion to quash or modify a subpoena under Rule 45(c)(3) may ordinarily be made by the person to whom the subpoena is directed because only that person has standing to attack the subpoena. However, a party, though not the person to whom a subpoena is directed and not in possession or control of the requested materials, does have standing if he or she has a personal right or privilege in respect to the subject matter of the subpoena or a sufficient interest in it." *200 South Broad Street, Inc. v. Allstate, Ins. Co.*, No. 07-9237, 2009 WL 1649721, at *2 (E.D. La. June 11, 2009). Under Rule 45(c)(3)(A)(iii), a party may move to quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exemption or waiver applies. The party seeking to protect the disclosure of sensitive information must first establish the confidential nature of the requested discovery. *See Freeport McMoran Sulpher, LLC v. Mike Mullen Energy Equipment Resource, Inc.*, No. A.03-1496, 2004 WL 595236, at *10 (E.D. La. Mar. 23, 2004); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008).

In order to determine if a subpoena is reasonable, courts examine the following

factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Generally, modification of a subpoena is preferable to quashing it outright." *Id.*

### V. Discussion

Because the Doctor Owners have a significant interest in the sensitive financial information which is sought by the subpoenas, they have standing to make a motion to quash or alternative motion for protective order under Rule 45. However, the Doctor Owners have not asserted a valid privilege or protection that would entitle them to a protective order prohibiting the disclosure of the requested financial information. There is no accountant-client privilege recognized either in Texas or under the federal law, *see Falsone v. United States*, 205 F.2d 734 (5th Cir. 1953), and the Court finds that the financial information sought by the subpoenas is highly relevant to the claims and defenses in this case. The order quashed the accountant subpoenas in part because they reached documents related to the Doctor Owners individually, and not solely documents relating to the DAC Plaintiffs. This was in error since the Doctor Owners have been joined in this lawsuit in their individual capacity as Counter-Defendants. Their financial records, which might or might not reveal that they received illegal kickbacks through a sham corporation, are relevant to this case.

The Doctor Owners claim that the accountant subpoenas are "not reasonably

calculated to lead to admissible evidence" because United has not made a preliminary showing with respect to its alter ego claim in its countersuit or any other filing. Doc. 321 at 5. The Court disagrees and finds that United's counterclaims have made a sufficient preliminary showing with respect to the Doctors' alter ego liability in this case. Additionally, United attached to its counterclaims the original complaint filed in a lawsuit by Palladium against DAC Surgical Partners, P.A., and its owner, Dr. C.T. Nguyen wherein Palladium states, "[Palladium] sues Defendant C.T. Nguyen on information and belief that he is the alter ego of Defendant DAC Surgical Partners, P.A." Based on this showing, United is entitled to further discovery on this issue. "[W]hen a party seeks discovery about the relationships between individuals and a corporation, 'relevance is broadly and liberally construed.' The issue is not whether [the party] may ultimately prevail on the 'piercing the corporate veil' theory, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Abu-Nassar v. Elders Futures Inc.*, No. 88 Civ. 7906, 1991 WL 45062, at *16 (citing *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986); *Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc.*, 524 F.2d 162, 167 (10th Cir. 1975) (plaintiff is entitled to pursue discovery which would either establish or fail to establish the existence of facts sufficient to justify the piercing of the corporate veil"); *Eletromatic (Pty) Ltd. v. Rad-O-Lite of Philadelphia, Inc.*, 90 F.R.D. 182, 184 (E.D. Pa. 1981) (allegation that corporations were not operated as independent entities insufficient to support discovery, but where a party demonstrates interrelated transactions and other connections, this is "enough to support further discovery on the relationship amount the various defendants.").

Judge Stacy's June 12 Order also held that United's requests for W-2s and 1099s from the DAC Plaintiffs foreclosed United's subpoenas for the Doctor Owners' W-2s, 1099s, and K-1s.  The Court finds that W-2s, 1099's and K-1s from both the DAC Plaintiffs and the Doctors are relevant in this case and orders them to be produced.  The hearing on these discovery issues took place before Judge Stacy on August 30, 2012. Doc. 262 at 5.  At that hearing, United requested "all W-2s and 1099s issued by or to [the DAC Plaintiffs] for the years 2003 to the present."  United argued that these documents were relevant to show "(1) whether the DAC Plaintiffs had any employees; (2) the purpose for which the DAC Plaintiffs were formed; (3) how much money the Doctors took from the DAC Plaintiffs and what their profit and financial motive was; (4) how were the payments treated for tax purposes; and (5) other individuals who may have discoverable information."  Tr. of August 30, 2012 Disc. Hr'g at 110:2–111:23 (Doc. 192).  The DAC Plaintiffs objected to this request, stating, "We've already provided a list of all of the employees so what they're been paid, I can't – don't see as relevant at all.  That's a 1099 and a 32-R Report to the wages paid in from the contractor's employees."  Doc. 192 at 110:25–111:4.  Judge Stacy sustained the objection and based her subsequent order on United's request for similar documents through third party subpoenas on this ruling.  This was in error.  The Court finds that for the same reasons described above, these documents are also highly relevant to the claims and defenses in this case, and orders that they be produced.

In the Doctor Owners' motion to quash, they argued in the alternative that should the court allow the subpoenas to stand, it should still place "reasonable limitations" on the scope of the requests, including time constraints.  The Doctor Owners complain that

"instead of limiting the subpoenas to the time range where the particular Counter-Defendants operated at Palladium, United and Ingenix demand all records dating back to January 1, 2003." Doc. 262 at 7. Although Palladium was formed in 2003, some of the DAC Plaintiffs did not yet exist for a number of years. The Court finds that the time period outlined in the subpoenas—"January 1, 2003 to the present"—is overbroad and would be more appropriately defined to begin for each of the DAC Plaintiffs and the Doctor Owner associated with each DAC Plaintiff on the date that the entity was formed and continue to the present date. "Discovery is to be limited to the relevant time period; but information for years prior or subsequent to the specific period covered by the dispute may still be relevant to [Counter]-Plaintiffs' claims. *Jackson v. Wilson Welding Serv. Inc.*, No. 10-2843; 2011 WL 5024360, at *4 (E.D. La. Oct. 20, 2011) (citations omitted).

## VI. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that United's objections are sustained, the Magistrate Judge's Order is **VACATED**, and the Motion to Quash, Motion for Protective Order, and Objections to United's Subpoena is **DENIED**. It is further

**ORDERED** that Mark S. Panzer P.C., Thrasher & Associates, P.C., Margolis Phipps & Wright P.C., and Weaver Tidwell, LLP comply with the subpoenas to produce documents with the one modification that the time period covered for each request is from the formation date of the entity about which the information is requested through the present.

SIGNED at Houston, Texas, this 14th day of February, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE