UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAC SURGICAL PARTNERS P.A., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-1355 |
| | § | |
| UNITED HEALTHCARE SERVICES, INC., *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER AND OPINION</u>

Pending before the Court in the above-referenced cause is Defendants United Healthcare Services, Inc. and Ingenix, Inc.'s (collectively, "United") Motion for Summary Judgment as to Plaintiffs Par Surgical, PLLC ("Par") and Euston Associates, PLLC ("Euston"), Docs. 659 & 660, Par & Euston's Response, Doc. 661, United's Reply, Doc. 666, and Par & Euston's Sur-Reply, Doc. 667. Also pending before the Court is Par, Euston, and Dr. Scott Cohen's Motion for Leave to File Cross-Motion for Summary Judgment as to United's Counterclaims, Doc. 663, a Motion to Expedite Consideration of the Motion for Leave, Doc. 664, and the Cross-Motion for Summary Judgment, Doc. 662. After careful consideration of the filings, record, and law, the Court grants United's Summary Judgment, and denies Par, Euston, and Dr. Cohen's Summary Judgment as moot.

## I. Background

The Court revisits the case background briefly. In sum, the Court consolidated causes of actions by doctors and surgeons ("Doctors") and their entities, seeking unpaid facilities fees from United. United countered that the Doctors' entities did not provide facility services, so were owed nothing, but were instead involved in illegal fraud/kickback schemes. United sought, and

the Court granted, a summary judgment against the Doctors and their entities. Doc. 541. The Court then denied a motion for reconsideration. Doc. 573. Next, Par & Euston asserted claims nearly identical to those dismissed by the summary judgment in the joint pretrial order. Doc. 644. So, United requested that this Court sever Par & Euston from the trial to allow United to assert summary judgment against Par & Euston's claims. Doc. 645. The Court granted United's request, and this Order and Opinion resolves the resulting summary judgment motion. Doc. 653.

The Plaintiffs assert that United promised in insurance verification calls to pay them for facilities services and that Plaintiffs could rely on those promises because United usually paid them. The formal causes of action alleged were: negligent misrepresentation, breach of implied-in-fact contract, Texas Insurance Code violations, *quantum meruit*, unjust enrichment, and promissory estoppel. Doc. 140 ¶¶ 64–94 ("DAC Complaint"); No. 4:13-CV-00197, Doc. 1-2 at 4–6 ("Par Complaint"). In the Order and Opinion granting the Motion to Consolidate, the Court summarized the similarities between the two cases, which the Court reproduces below.

On April 8, 2011, twenty plaintiffs ("DAC Plaintiffs"), all Texas professional associations owned by Doctors, filed the DAC Action against United, which consists of an insurance company and its wholly-owned subsidiary. DAC Compl., Doc. 1. By the time of the filing of the Fourth Amended Complaint, Doc. 140, on July 2, 2012, the DAC Plaintiffs had grown to thirty-seven professional associations and limited liability partnerships and companies. Their allegations were as follows:

It is common practice in the health care industry to perform outpatient surgery at an ambulatory surgical center ("ASC") instead of a hospital. Doc. 140 ¶ 45 n.2. Accordingly, each of the DAC Plaintiffs entered into a "use agreement" with a licensed ASC operator to perform surgery at an ASC in exchange for a fee. Doc. 140 ¶ 45. For all but two of the DAC Plaintiffs,

that ASC operator was The Palladium for Surgery–Houston, LLP ("Palladium"). Doc. 140 ¶ 45 n.2. Before performing these procedures on United's insureds, the Doctors' representatives called United to verify that the surgeries were valid and billable, and the DAC Plaintiffs' billing agents made a second call to United to verify patients' eligibility and coverage. Doc. 140 ¶¶ 44, 46. After confirming the costs as valid and billable, United would state how much it would pay for the claim and, after surgery United would pay that stated amount. Doc. 140 ¶¶ 46, 48. Standard claims consisted of two types of fees: a physician fee and a facility fee. Doc. 140 ¶ 49. This practice continued for several years, as United compensated the DAC Plaintiffs for hundreds of surgeries and medical treatments performed at ASCs, paying both physician fees and facility fees. Doc. 140 ¶ 50.

In late 2009, however, United sent each DAC Plaintiff an "Overpayment Demand" letter, contending that Texas law required each DAC Plaintiff to maintain a separate ASC license and, because they did not, they were never entitled to compensation for facility fees. Doc. 140 ¶ 58. Thus, United stopped paying such claims, including pending claims totaling over $10 million, and sought repayment of the facility fees for which United had previously provided compensation. Doc. 140 ¶¶ 58–59. Additionally, United allegedly underpaid other claims totaling approximately $10 million. Doc. 140 ¶ 60. As a result, the DAC Plaintiffs filed their lawsuit, asserting the following causes of action: negligent misrepresentation, breach of implied-in-fact contract, Texas Insurance Code violations, *quantum meruit*, unjust enrichment,4 and promissory estoppel. Doc. 140 ¶¶ 64-94.

The two plaintiffs in the Par Action, Par Surgical, PLLC and Euston Associates, PLLC, are both Texas professional limited liability companies, originally created and owned by Dr. Scott Cohen ("Dr. Cohen") and currently owned by Dr. Donald Kramer. Doc. 265 at 2 n.1. On

December 17, 2012, Par & Euston filed suit against United in the 113th Judicial District Court of Harris County Texas, styled *Par Surgical, PLLC and Euston Associates, PLLC v. United Healthcare Services, Inc. and Ingenix, Inc.*, Civil Action No. 2012-73871, and on January 25, 2013, United removed that case to the Southern District of Texas, which was assigned to the Honorable Ewing Werlein. Notice of Removal, Par Action, No. H-13-197, Doc. 1. On April 8, 2013, United filed an opposed motion to consolidate the Par/Euston case here; the motion to consolidate was granted June 24, 2013. In their Par Complaint, Par & Euston made the following allegations:

As part of their health care operations, Par & Euston entered into use agreements with Palladium, allowing Dr. Cohen to perform outpatient surgeries at the ASC operated by Palladium in exchange for a fee. Par Compl. at 3. Before such surgeries on United's insureds, Par & Euston contacted United for preapproval of the physician fees and facility fees. Par Compl. at 4. Palladium also contacted United for the same purpose; thus, prior to each surgery, United represented twice that the surgery and its associated fees were preapproved and covered by insurance. Par Compl. at 4. After surgery, Par & Euston submitted claims for surgery and facility fees to United, and, for years, United paid these claims. Par Compl. at 3–4.

Then, in 2009, United sent Par & Euston "Overpayment Demand" letters, stating that they had each violated Texas law by not individually possessing an ASC license. Par Compl. at 3–4. Therefore, explained United, it would no longer reimburse Par & Euston for their ASC facility fees, and it demanded repayment of previously reimbursed facility fees. Par Compl. at 3. Additionally, United has withheld compensation from Par & Euston for unrelated medical services in order to offset the amounts claimed in the "Overpayment Demand" letters. Par Compl. at 4. Consequently, Par & Euston filed their suit, asserting the following causes of

action: negligent misrepresentation, breach of implied-in-fact contract, Texas Insurance Code violations, *quantum meruit*, and promissory estoppel. Par Compl. at 4–6.

As this Court previously explained, "even a cursory glance reveals virtually identical allegations and causes of action against common defendants; the only meaningful difference is the names of the plaintiffs." Doc. 288 at 5.

After Par & Euston case was consolidation with the DAC Plaintiffs' case, United filed a summary judgment against "Plaintiffs DAC Surgical Partners, P.A., et al. . . . as to all of the Shell Companies' causes of action set forth in their Fourth Amended Complaint ('FAC')." Sealed Doc. 485. United did not specifically name Par & Euston in their motion or cite to the Par Complaint. *Id.* The Court granted summary judgment on the Plaintiffs' claims for negligent misrepresentation; breach of implied-in-fact contract; Texas Insurance Code §§ 541.051, 541.052, and 541.061; Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.46 ("DTPA"); *quantum meruit*; promissory estoppel; and unjust enrichment. The Court did not consider United's motion on claims of "lack of standing, lack of a real party in interest under Rule 17, statute of limitations, and ERISA preemption." Doc. 541 at 31.

Despite not being directly named in the summary judgment, Par & Euston took the position that their causes of action were dismissed. In their Motion for Reconsideration, Par & Euston asserted that "the Court has now granted summary judgment against Plaintiffs on all causes of action" and that the "Plaintiffs no longer have any claims for facility fees." Doc. 544 at 19. The Plaintiffs, including Par & Euston, expressly defined "Plaintiffs" to refer to "all of the doctors ("Doctors") and physician entities ("Entities") that are either plaintiffs, counter-defendants, or third-party defendants in this case." Doc. 544 at 1 n.1. Thus, Par & Euston asserted that the same claims the Court now considers were dismissed by the earlier Order and

Opinion granting summary judgment.

Yet, Par & Euston allegedly next re-asserted their causes of action in the joint pretrial order. Doc. 644. And United re-asserted a summary judgment against those causes of action. Doc. 659.

Par & Euston's live pleading remains their Original Petition filed in State Court.

## II. United's Summary Judgment

United seeks summary judgment on Par & Euston's claims of negligent misrepresentation, breach of implied contract, Texas Insurance Code violations, Texas Business & Commerce Code/DTPA violations, *quantum meruit*, and promissory estoppel claims and also assert that Par & Euston lack standing and are barred by the statute of limitations. Doc. 659.

It is common practice in the medical industry for out-of-network doctors to call insurance companies to verify insurance coverage and authorize services prior to providing medical or facility services. After providing service, doctors submit billing, which the insurer and doctors negotiate. After negotiation and deductions, the insurer issues an explanation of benefits showing the approved amount and pays its portion of the bill to the medical or facility provider. Doc. 661 at 15–16 (outlining the claims process). But United contends that Par & Euston were not following the common practice of seeking reimbursement for facilities fees. United asserts that Par & Euston were "shell companies" that offered no "goods or services" to justify the facility fee payments they received for "steering" patients to Palladium. Doc. 659 at 17–18.

The parties focus their argument on how the verification calls and course of conduct of verification calls through payment should be applied in this context and to these causes of action. United asserts that the verification of insurance calls are not promises to pay for facility fees and that the course of conduct shows that Par & Euston did not provide any facility services. *Id.* at

24, 27. Par and Euston assert that the verification calls amounted to a promise and that United's intention not to pay any facility fees made the promise a lie; but a lie that Par & Euston could and did rely on because United's course of conduct was to inconsistently pay facility fees. Doc. 661. Par & Euston also assert that, as part of their regular course of conduct, they provided administrative facility services, including verification of coverage, selection of and negotiation with the ASC facility, and billing. *Id*. at 22–27.

Thus, United contends that it should be granted summary judgment, and Par & Euston contends either that they provided evidence of each claim or that a genuine issue of material fact exists as to each claim. Docs. 659 & 661.

### A. Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hanif v. United States*, No. CV H-15-2718, 2017 WL 447465, at *4 (S.D. Tex. Feb. 2, 2017). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) and *Liberty Lobby*, 477 U.S. at 249–50).

The movant bears the initial burden "of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. Allegations in a plaintiff's complaint are not evidence.

*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995) (for the party opposing the motion for summary judgment, "only evidence—not argument, not facts in the complaint—will satisfy the burden."). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). "The burden then shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits [and other competent evidence] designate specific facts showing that there is a genuine issue for trial.'" *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 324).

"A party cannot defeat a motion for summary judgment with an affidavit that contradicts, without explanation, his sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *see also Thurman v. Sears Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992)("[N]onmovant cannot defeat summary judgment by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue.").

### B. Prior Grant of United's Summary Judgment and Denial of Motion for Reconsideration

The Court finds that it granted United's summary judgment against the DAC Plaintiffs on the same issues as in this summary judgment. The Court focused on the role of the "verification calls, use of the Igenix Database [as a fee schedule], and past payments of facility fees" within the various causes of action: negligent misrepresentation, breach of implied-in-fact contract, Texas Insurance Code and DTPA claims, *quantum meruit*, promissory estoppel, and unjust

enrichment claims. Doc. 541 at 18, 31. The Court considered the implied contract claim before the misrepresentation claim.

The Court granted United's Motion for Summary Judgment on Plaintiffs' implied contract and breach of contract claims[1] based on the fact that (1) the insurance verification calls made from Palladium to United did not satisfy the elements of a contract, (2) "Plaintiffs [showed] no connection between the Ingenix database licensed to Palladium and the usual and customary rates provision in the Eligibility Document or any other written or oral representation in regards to fees," and (3) "past payments [for facility fees] alone do not show mutual intent to be bound, without performance [of facility services] by the other party." *Id*. at 17–19. The Court found insufficient evidence that the Doctors' entities provided facility services because the use agreements did not obligate the DAC Plaintiffs to perform facility services, aside from giving advice to the ambulatory surgical center. *Id*. at 19.

In the Order and Opinion on the Motion for Reconsideration, the Court reviewed case law on the role of the verification calls and whether the Court could resolve the issue of whether the parties mutually assented to form a contract, i.e. a meeting of the minds, on summary judgment. Doc. 573 at 6. The DAC Plaintiffs, joined by Par & Euston, asserted "that the verification procedure creates an obligation between the insurer and the health care provider." Doc. 544 at 10 (citing *Hermann Hosp. v. Nat'l Standard Ins. Co.*, 776 S.W.2d 249, 252 (Tex. App.— Houston [1st Dist.] 1989, writ denied)). But the Court held that *Hermann Hospital* concerned a negligent representation claim, not a breach of contract claim, and "has no bearing

---

[1] The elements of breach are: (1) existence of a contract, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from that breach. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citing *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).

on the issue of whether verification calls (without evidence of the content of the conversations) may satisfy the elements of a contract."[2] Doc. 573 at 7.

As to the issue of meeting of the minds, the Court held that whether the parties intended to be bound may be determined as a matter of law. *Id*. at 8 ((citing *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston 2010, pet denied) (citing *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988)). The Court also noted that the Palladium business office manager could not recall if United ever promised or guaranteed payment before a patient had his or her procedure, and that he knew the difference between a carrier verifying insurance benefits as opposed to guaranteeing payment. *Id*. The testimony from the DACs and United disclaimers also stated that verification is not a promise of payment. *Id*. Therefore, the Court affirmed its prior holding that as a matter of law, there was no implied contract between the parties. *Id*.

The Court also granted summary judgment on the negligent misrepresentation claim. First the Court explained that "the DAC plaintiffs have pointed to no evidence of a genuine issue of material fact that United made any guarantees of payments or representations of coverage to them beyond the health care plans. As a result there can be no evidence of reliance or damages [both of which are elements of a claim of negligent misrepresentation[3]]." *Id*. at 20. Although

---

[2] The DAC Plaintiffs also briefly mentioned *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011) in the section of their brief discussing the breach of contract claim. Document No. 544 at 11. However *Access Mediquip* similarly did not involve a breach of contract claim, and therefore the Court held that the case was not relevant.

[3] "In order [to] demonstrate a claim for negligent misrepresentation, a plaintiff must show: (1) the defendant made a representation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) the defendant supplied 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representations." *Fankhauser v. Fannie Mae*, No. 4:10-CV-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 30, 2011), *report and recommendation adopted sub nom. Fankhauser v. Mae*, No. 4:10CV274, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011) (citations omitted).

Plaintiffs made several allegations that United confirmed it would pay the facility fees, the Court

(1) explained that if there was promise of future payment,[4] it would not be actionable and (2)

conducted an in-depth analysis of the evidence, and the evidence contradicted the allegations that

United had made misrepresentations.[5] *Id.* at 21–25. The Court then conducted an analysis of the

---

[4] DAC Plaintiffs did not refer to this reasoning in their Motion for Reconsideration. Courts have explained that, in order to satisfy the second element, "the misrepresentation at issue must be one of existing fact." *Id.* (citing *BCY Water Supply Corp. v. Residential Invs., Inc..,* 170 S.W.3d 596, 603 (Tex.App.-Tyler 2005, pet. denied)). "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." *Id.* This Court previously held that Plaintiffs' allegations that "Defendants preauthorized medical services and treatment, including use of the facility in which the treatment would be performed" and that "the medical services, including the facility fees, were authorized and subject to payment in accordance with United's fee schedule" satisfied the "requirement that Plaintiffs allege that Defendants supplied false information regarding existing facts." (Document No. 43 at 9). However, in a subsequent opinion, the Court cautioned that "Plaintiffs may not pursue a negligent misrepresentation claim based on promises of future performance." *DAC Surgical Partners, P.A. v. United Healthcare Servs., Inc.*, No. CIV.A. H-11-1355, 2011 WL 5006598, at *2 (S.D. Tex. Oct. 20, 2011). Therefore, to the extent that DAC Plaintiffs alleged that United specifically misrepresented that it would pay the facility fees, as opposed to merely verifying coverage or authorizing a procedure, those claims failed as a matter of law (as well as due to lack of evidence). Furthermore, DAC Plaintiffs' claims that do relate to *existing* facts fail due to lack of evidence, as discussed above.

[5] The evidence examined included:

(1) Testimony of the DAC doctor owners "who had no knowledge of communications with United on coverage matters, including specific dates, months, or years when the communications took place," Doc. 486-12 at 64-65;

(2) A "chart of excerpts from the DAC plaintiffs doctor owners in which they confirmed that a verification of coverage is not a promise of payment," Doc. 486-12;

(3) "'Fax eligibility status' communications from United" stating that "VERIFICATION OF COVERAGE IS NOT A GUARANTEE OF BENEFITS. ACTUAL PLAN COVERAGE AND BENEFIT PAYMENTS ARE DETERMINED WHEN A CLAIM IS RECEIVED. FOR MORE INFORMATION ABOUT PLAN BENEFITS, PLEASE VISIT OUR IN NETWORK HOSPITAL AND PHYSICIAN PROVIDER WEB SITE. . . ." Doc. 489-38;

(4) Letters sent to DAC doctor owners, patients, and Palladium with language such as "This letter is not a statement of benefit coverage or a guarantee of the members' eligibility. If benefits are available for these services, they will be reimbursed at the OUT-OF-NETWORK benefit level. . . . If you need eligibility or benefit coverage information, please call the toll-free number shown on the employee's ID card. If benefits are available for these services, they will be considered according to the terms of the employees benefit plan." Doc. 489-39;

(5) Testimony of various witnesses who had no knowledge of the verification calls, or who were not aware of any representations made by United, Docs. 486-31, 486-30, 487-19;

evidence regarding the Ingenix database, explaining that the evidence did not demonstrate that the licensing of the database to Palladium constituted a "fee schedule" which guaranteed the payment of facility fee bills at the rates in the database. *Id*. at 25-30.[6] For those reasons, the Court granted United's Motion for Summary Judgment on Plaintiffs' negligent misrepresentation claim.

In the Order and Opinion on the Motion for Reconsideration, the Court reviewed case law on the role of the verification calls and reliance. Doc. 573 at 10–16. The DAC Plaintiffs, joined by Par & Euston, asserted that the Court "ignored relevant authority," including *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011) and *Hermann Hospital*, and should not have relied on *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna*

---

(6) "[E]xcerpts of testimony from the DAC doctor owner witnesses testifying that they knew that their DAC entities and Palladium were out-of-network, and, as such, did not have contracts with United," Doc. 286-15.

Doc. 541 at 21–25.

[6] The evidence examined included:

(1) Donald Kramer's deposition testimony "that he could not state that Palladium's charges were based solely on the Ingenix database" Doc. 486-31 at 32:6–11;

(2) The Master Services and License Agreement ("MSLA") entered into between Ingenix and Palladium Management, LLP (Document No. 489-8), which stated "[a]ny reliance upon, interpretation of and/or use of the Data by Customer is solely and exclusively at the discretion of Customer. Customer's determination or establishment of an appropriate reimbursement level or fee is solely within Customer's discretion, regardless of whether Customer uses the Data. Ingenix does not determine, on Customer's behalf, the appropriate fee or reimbursement levels for Customer and its business. Customer may use the Data (1) to create fee schedules . . . and (2) for reviewing or setting an allowable fee in adjudication and/or payment of healthcare bills submitted to Customer.";

(3) The fact that "United, the entity that processed and paid claims was not the licensor of the Outpatient Facility Module ("OPFM") licensed to Palladium" Doc. 489-8;

(4) The lack of evidence of any United involvement with OPFM Doc. 521-8;

(5) Evidence that only Palladium, not the DAC Plaintiffs, was authorized to use the Ingenix data in the OPFM Doc. 489-8; and

(6) The lack of evidence that the Ingenix data was flawed Doc. 486-31.

Doc. 541 at 25–30.

*Life Insurance Company*, No. CIVA H-05-4389, 2007 WL 320974 (S.D. Tex. Jan. 30, 2007). *Id.* at 11–15. The Court held that *Hermann Hospital* "does not state that verification of coverage *alone* always creates justifiable reliance on an insurer's alleged negligent misrepresentation." *Id.* 12–13.[7] The insurer must either make (a) a guarantee of payment or (b) a representation of coverage beyond the health care plans that (c) the medical provider must then act upon. *Id.* at 11–13. Here, the Court found that Plaintiffs provided insufficient evidence of any guarantee beyond verifying coverage under the healthcare plan, and that Plaintiffs provided insufficient evidence of any facility service they provided United's insureds. *Id.*

The Court also held that *Access Mediquip* was inapplicable because *Access Mediquip* focused on ERISA preemption and "did *not* include an examination of the evidence," but here, the case is not focused on ERISA preemption and is focused on an examination of the evidence. *Id.* at 14. Here, the Court held that Plaintiffs provided insufficient evidence of negligent representation because the content of the verification calls was almost nonexistent and the available evidence showed Plaintiffs' awareness that verification is not a guarantee of payment. *Id.* Thus, neither *Hermann Hospital* nor *Access Mediquip* demanded that the Court arrive at a different result upon reconsideration. *Id.* The Court does not revisit these cases, here, when Par & Euston reassert their positions on these cases a second time. Doc. 661 at 31, 33, 36, 42, and 63.

Finally, the Court held that *Ambulatory Infusion* was relevant because it involved similar verification calls for out-of-network services where the insurer did not represent that every bill would be paid. Like the instant case, the plaintiff's witness testified that the insurer told the

---

[7] The Court also held that, unlike here, *Hermann Hospital* was focused on duties, but this case focuses on the evidence around the verification calls. Doc. 573 at 11 (citing *Hermann Hosp. v. Nat'l Standard Ins. Co.*, 776 S.W.2d 249, 252–55 (Tex. App.— Houston [1st Dist.] 1989, writ denied).

plaintiff's witness that the patient "was covered by the Plan and what the Plan paid for out-of-network services provided." Doc. 573 at 14–15 (citing *Ambulatory Infusion*, 2007 WL 320974 at *4). The insurer then processed the claim and paid in accordance with its policies. *Id*. The Court held that the DAC Plaintiffs provided less evidence for misrepresentations than in *Ambulatory Infusion*: Here, United verified coverage for patients, but there is no evidence that it represented that every claim would be paid or that it would pay facility fees to the unlicensed DACs. *Id*. Thus, the Court affirmed that those verification calls could not justify the reliance necessary for negligent misrepresentation. *Id*. at 14–16.

The Court also granted summary judgment on the insurance code violations, DTPA violations, promissory estoppel, *quantum meruit*, and unjust enrichment claims. As to the insurance code and DTPA violations, the Court held that the Plaintiffs pointed to no evidence establishing a genuine issue of material fact that representations made during the verification calls were agreements conferring rights, remedies, and obligations.[8] Doc. 541 at 30. As to promissory estoppel, the Court held that the DAC Plaintiffs failed to point out any evidence that United specifically promised to pay facility fees or that it would be reasonable to rely on United's alleged promise.[9] *Id*. at 31. As to the *quantum meruit* and related unjust enrichment claims, the Court held that the DAC Plaintiffs did not provide healthcare services to United and

---

[8] Plaintiffs assert misrepresentation under TEX. INS. CODE ANN. §§ 541.051, 541.052, 541.061; and the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.46 ("representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law").

[9] "The elements of a promissory estoppel claim are: (1) a promise; (2) reliance thereon that was foreseeable to the promisor; and (3) substantial reliance by the promisee to his detriment." Miller v. Raytheon Aircraft Co., 229 S.W.3d 358, 378-79 (Tex. App.-- Houston [1st Dist.] 2007, no pet.) (citing English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)).

so could not recover on those causes of action.[10] The Court did not discuss Plaintiffs' other claims (insurance code violations, DTPA violations, promissory estoppel, and *quantum meruit*) in the Order and Opinion on Reconsideration because the DAC Plaintiffs and Par & Euston did not advance those other claims in their Motion. Doc. 573 at 5 n.5.

For the above reasons, the Court granted summary judgment against the DAC Plaintiffs' causes of action and denied the motion for reconsideration. The Court will now consider whether it should arrive at the same result as to Par & Euston's identical causes of action.

### C. Allegations in United's Summary Judgment

United contends that United seeks summary judgment on Par & Euston's claims of negligent misrepresentation, breach of implied contract, Texas Insurance Code violations, Texas Business & Commerce Code/DTPA violations, *quantum meruit*, and promissory estoppel claims and also asserts that Par & Euston lack standing and are barred by the statute of limitations. Doc. 659. As to negligent representation, United asserts that the verification calls were not promises to pay Par & Euston for facility fees, no fee schedule existed upon which Par & Euston could rely, and Par & Euston provided no evidence of out-of-pocket damages. *Id*. at 22–27. As to breach of implied-in-fact contract, United asserts again that the verification calls were not promises, Palladium, not Par & Euston, provided facility services to patients, and again, Par & Euston provide no evidence of damages. *Id*. at 27–29.

United makes similar assertions as to the alleged code violations. As to the Texas Code of Insurance violations, United asserts that Par & Euston lack standing and that United did not

---

[10] *See Electrostim Med. Services, Inc. v. Health Care Serv. Corp.*, 962 F. Supp. 2d 887, 898 (S.D. Tex. 2013), *rev'd in part on other grounds*, 13-20649, 2015 WL 3745291 (5th Cir. June 16, 2015) ("Courts have refused to recognize an unjust enrichment or quantum meruit cause of action based on healthcare services provided to a participant or beneficiary of a healthcare insurance policy or plan") (listing cases).

make any misrepresentations. *Id*. at 29–31. Similarly, as to the Texas Business & Commerce Code/DTPA violations, United asserts that Par & Euston lack standing and did not provide evidence of the rights they had or of the misrepresentations United allegedly made. *Id*. at 31–32.

United makes similar assertions as to the equitable claims. As to the *quantum meruit* claim, United asserts that Par & Euston did not provide facility services to United or United's insureds because Palladium provided the facility services. *Id*. at 32–35. As to the promissory estoppel claim, United asserts "there is no evidence that United promised anything, much less that it would pay Par & Euston for facility services they did not perform, were not licensed to perform, and concerning which Par and Euston deliberately concealed their involvement." *Id*. at 35. Thus, United asserts summary judgment as to all of Par & Euston's claims.

United also asserts generally that Par & Euston lack standing and that their actions are barred by statutes of limitations.

### D. Discussion

*Verification Telephone Calls*

According to the Original Petition, Dr. Cohen made the verification telephone calls for Par & Euston. Dr. Cohen would contact United on behalf of Par & Euston to "receive pre-authorization that the surgery and facility fees were covered under the insurance contract." Par Complaint at 4. Par & Euston further allege that "United promised to provide coverage and pay the fees associated with the use of the ASC by pre-approving and confirming insurance coverage." *Id*. at 7. "Palladium would also contact a representative of United and receive pre-authorization that the surgery and the facility fee were covered under the insurance contract." Par Compl. at 4. This discussion will focus on the evidence of Dr. Cohen's verification calls to

determine if a different outcome is warranted than in the previous summary judgment. The Court finds that it does not.

The Court found the following evidence insufficient to support the DAC Plaintiffs' claims that the verification calls were promises of payment:

(1) Testimony of the DAC doctor owners "who had no knowledge of communications with United on coverage matters, including specific dates, months, or years when the communications took place," Doc. 486-12 at 64-65;

(2) A "chart of excerpts from the DAC plaintiffs doctor owners in which they confirmed that a verification of coverage is not a promise of payment," Doc. 486-12;

(3) "'Fax eligibility status' communications from United" stating that "VERIFICATION OF COVERAGE IS NOT A GUARANTEE OF BENEFITS. ACTUAL PLAN COVERAGE AND BENEFIT PAYMENTS ARE DETERMINED WHEN A CLAIM IS RECEIVED. FOR MORE INFORMATION ABOUT PLAN BENEFITS, PLEASE VISIT OUR IN NETWORK HOSPITAL AND PHYSICIAN PROVIDER WEB SITE. . . ." Doc. 489-38;

(4) Letters sent to DAC doctor owners, patients, and Palladium with language such as "This letter is not a statement of benefit coverage or a guarantee of the members' eligibility. If benefits are available for these services, they will be reimbursed at the OUT-OF-NETWORK benefit level. . . . If you need eligibility or benefit coverage information, please call the toll-free number shown on the employee's ID card. If benefits are available for these services, they will be considered according to the terms of the employees benefit plan." Doc. 489-39;

(5) Testimony of various witnesses who had no knowledge of the verification calls, or who were not aware of any representations made by United, Docs. 486-31, 486-30, 487-19;

(6) "[E]xcerpts of testimony from the DAC doctor owner witnesses testifying that they knew that their DAC entities and Palladium were out-of-network, and, as such, did not have contracts with United," Doc. 286-15.

(7) Testimony from Palladium's Business Office Manager that she called United to verify the insurance, discussing the "patient's name, the patient's ID Number and their date of birth, and the CPT code." Randall-Tillis Deposition, Doc. 512-25 at 12:18–13:2. But she did not recall if United "ever promis[ed] or guarantee[d] payment before a patient had his or her procedure," and that she understood "that there's a difference between a carrier verifying insurance benefits as opposed to guaranteeing payment." Doc. 512-25 and 487-19 at 5:17-6:3.

Here there is a similar lack of evidence of the content of the verification calls:

(1) Like the DAC owners who could not remember specific details in point (1), Dr. Cohen's deposition only consists of general details similar to what Palladium's Business Office Manager provided in point (7).

(2) Testimony from Dr. Cohen that he could not remember if Palladium employees called United or who he spoke with at Palladium concerning his communications with United. Doc. Doc. 665-1 at 64:21–25, 66:20–21.

(3) Letters sent to Par & Euston include language similar to that sent to the DAC owners in point (4), "Please be aware that the information in this letter does not guarantee payment represent a treatment decision. Payment is based on the terms of your plan inpatient eligibility when services are received . . . . If any . . . limit has been or will be exhausted before you receive any or all of the services . . . , coverage will not be provided for any visit … which exceeds the limit(s) specified in your benefit plan, unless otherwise contractually indicated. We recommend that you call the number on the back of the members insurance ID card for more information about plan eligibility limitations." Docs. 660-11 & 12.

(4) Because Par & Euston allege that Palladium also made verification calls, testimony from Palladium's Business Office Manager's in point (7) about the lack of a guarantee is again relevant.

(5) Testimony from United's Corporate Representative that United would contribute to a covered claim a "set amount of money . . . to that procedure . . . depending upon the plan language." Doc. 665-3 at 164:5–21.

(6) A Declaration by Dr. Cohen, provided for the first time as attached to Par & Euston's Response, that he expected to be paid, even if United had not guaranteed payment, "I was advised by United that I was authorized to proceed and that both the professional fee and the facility fee *would be paid*." Doc. 665-5 at 2.

Dr. Cohen provided only general details of the verification calls. Dr. Cohen could not remember "any specific calls" or "specific patient names" or the names of any "United employees that [he] spoke to." Cohen Deposition, Doc. 665-1 at 58:3–10, 59:4–6, 61:6–8. Dr. Cohen alleged that he generally provided United with the "address, phone number, [and] Tax ID for [Palladium]" along with the "patient name," "date of birth," "ID Number," "patient condition," "recommended procedure," "date of service," "treating surgeon," and "surgeon's Tax ID Number." *Id*. at 62–65.

When Dr. Cohen was asked if Palladium employees would also "make calls to United regarding a specific procedure," he replied, "You'd have to check with them. I don't … know." *Id*. at 64:21–25. Nor could Dr. Cohen recall who at the Palladium he spoke with about the

verification calls, "I don't remember the names - of the people at the Palladium . . . ." *Id.* at 66:20–21.

After providing information for the patient and procedure, Dr. Cohen would next ask for verification of coverage. When Dr. Cohen was asked, "Would you ask whether facility fees associated with the procedure would be covered under the patient's insurance contract?", he responded, "[I]n that conversation you always deliver information regarding the surgeon as well as the facility. So I'm going to say yes to that." *Id.* at 60:17–61:1. He elaborated that United "would provide authorization for services," meaning that "the treatment was medically necessary and the treatment to be provided was a covered benefit under the patient's plan. That's – that's the whole process." *Id.* at 73:3–12. A "covered" benefit was defined in the deposition of Stacy Chalupscky, United's Corporate Representative, to mean that United would contribute a "set amount of money . . . to that procedure . . . *depending upon the plan language.*" Doc. 665-3 at 164:5–21 (emphasis added). But Dr. Cohen testified in his deposition that United would never promise or guarantee payment of the facility fee. Doc. 665-1 at 73:1–3, 24–25.[11]

---

[11] The extended exchange is as follows:

> Q: And when you would speak with a representative of United, would you – would United guarantee payment?
>
> A: United Healthcare would provide authorization for the services.
>
> Q: Could you explain to me what—what you meant—mean by "provide authorization."
>
> A: Meaning in their – they would determine that the treatment was medically necessary and the treatment to be provided was a covered benefit under the patient's plan. That's – that's the whole process.
>
> Q: That the procedure was a covered benefit under the plan?
>
> A: That's correct.
>
> Q: Would they say, "We promise to pay 100 percent of the facility fee billed to you – to United"?
>
> A: They would not use those words.
>
> Q: Would they say, "We promise to pay 100 percent of the professional fee that Dr. Cohen bills to United"?

Dr. Cohen's testimony is consistent with the testimony of Palladium's Business Office Manager who testified in verification telephone calls she had with United, she did not recall if United "ever promis[ed] or guarantee[d] payment before a patient had his or her procedure," and that she understood "that there's a difference between a carrier verifying insurance benefits as opposed to guaranteeing payment." Doc. 512-25 and 487-19 at 5:17-6:3.

Yet, in his Declaration, attached to Par & Euston's Response to United's Motion for Summary Judgment, Dr. Cohen clarified that he expected to be paid even though United had not guaranteed payment, in pertinent part, as follows:

> I was advised by United that I was authorized to proceed and that both the professional fee and the facility fee *would be paid*. I was not told of the amount that would be paid, which was normal because specific policy terms would still need to be taken into account in determining the final amount. But I was told that the fees *would be paid*. If not, I would not have preceded with the surgeries.

Doc. 665-5 at 2 (emphasis added).

In its Reply, United asserts because Dr. Cohen was previously deposed, he cannot "manufacture a genuine issue of material fact" by submitting a contradictory declaration or affidavit. Doc. 666 at 4 (citing *Doe ex. rel. Doe v. Dallas Independent School Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). The Court agrees with United that "[a] party cannot defeat a motion for summary judgment with an affidavit that contradicts, without explanation, his sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).

So in their Surreply, Par & Euston explain that Dr. Cohen's Declaration is consistent with the prior deposition because it completes the deposition testimony that United did not fully

---

A: They would not say that.

Q: Would they ever use the word "guarantee"?

A: No.

Doc. 665-1 at 73:1–25.

develop. Doc. 667 at 2. In the deposition, Dr. Cohen confirmed that he asked United whether facility fees would be "covered under the patient's insurance contract." *Id*. Par & Euston assert that "United could have followed up by asking how United answered that question, but did not do so." *Id*. Instead, Par & Euston assert that Dr. Cohen's Declaration provided how United answered. *Id*. According to the Declaration, United "advised" Cohen that he "was authorized to proceed and that both the professional fee and the facility fee *would be paid*." *Id*. (emphasis added). Thus, Par & Euston assert that "United's contention that Dr. Cohen's Declaration is inconsistent with his deposition is just not true." *Id*. at 3.

Viewing this evidence in the light most favorable to Par & Euston, which we must, the Court interprets Dr. Cohen's testimony and deposition as consistent. *See Hanif*, 2017 WL 447465, at *4. Dr. Cohen consistently described the normal process of insurance verification that doctors make every day. His language is similar to that expressed by the witness in *Ambulatory Infusion*, who testified that the insurer represented that the patient "was covered by the Plan and what the Plan *paid* for out-of-network services provided." *Ambulatory Infusion*, 2007 WL 320974 at *4 (emphasis added). By "covered," Dr. Cohen states that he expected to be "paid." But a subjective expectation of payment does not imply that United guaranteed payment. United's Corporate Representative clarified "covered" means to contribute money to a procedure *according to the healthcare plan*. Docs. 665-3 at 164:5–21; Doc. 573 at 14–15 (citing *Ambulatory Infusion*, 2007 WL 320974 at *10 (holding that the negligent misrepresentation claim failed because there was no representation that every charge would be paid). United verified insurance coverage, but did not guarantee payment.

Par & Euston have pointed to no evidence of a genuine issue of material fact that United made any guarantees of payments or representations of coverage to them beyond the health care

plans. The Court finds that Dr. Cohen's testimony and Declaration read together provide insufficient evidence of a guarantee of payment. Thus, the Court adopts its reasoning in the prior Opinions and Orders granting summary judgment and denying the prior motion for reconsideration as to all of Plaintiffs' causes of action.

The Court holds that Dr. Cohen's verification calls do not support claims for negligent misrepresentation, breach of implied-in-fact contract, Texas Insurance and Business Code violations, *quantum meruit*, and promissory estoppel. As to the negligent misrepresentation claim, Par & Euston provide no evidence of a genuine issue of material fact that United made any guarantees of payments or representations of coverage to them beyond the health care plans. And to the extent that Par & Euston allege that United specifically mispresented that it would pay the facility fees, alleged promises of future performance cannot support a claim of negligent misrepresentation as a matter of law. *See DAC Surgical Partners, P.A. v. United Healthcare Servs., Inc.*, No. CIV.A. H-11-1355, 2011 WL 5006598, at *2 (S.D. Tex. Oct. 20, 2011). As to the implied breach of contract claim, the insurance verification calls do not provide sufficient evidence of a promise or guarantee intending the parties to be bound. As to the alleged Texas Insurance and Business Code violations, the verification calls are insufficient evidence of agreements conferring rights, remedies, and obligations. As to the *quantum meruit*, the Court finds that Par & Euston did not provide healthcare services to United and so could not recover under *quantum meruit*. As to promissory estoppel, the Court holds that Par & Euston did not provide sufficient evidence that United specifically promised to pay facility fees. Thus, the Court holds that Par & Euston provide insufficient evidence of the verification calls to render a different result than in the prior summary judgment.

*Course of Conduct*

United asserts that Par & Euston did not provide any facility services and could not do so without an ASC license. According to Dr. Cohen's testimony, Par & Euston would provide assistance with the "precertification process, determining medical necessity, assistance with coding, [and] assistance with appealing." Doc. 665-1 at 93:1–7. He testified that Par & Euston did not provide any "employees," "physical supplies used during a procedure," "paper," "pens," a "printer," or "utility bills." *Id*. at 93:8–22. Dr. Cohen testified that by contrast, Palladium provided the use of an "Ambulatory Surgery Center, staff, equipment, generally the – the services that a – that an Ambulatory Surgery Center provides, in – in – you know, in its role regarding out-patient surgery." *Id*. at 51:20–25, 52:1. Par & Euston assert that the administrative services of verifying coverage, selecting and negotiating with the ASC facility, and billing were administrative facility services for which United owed them payment.[12] *Id*. at 22–27.

But because the Court has held that the verification calls provide insufficient evidence of a promise, the Court need not consider whether the course of conduct included performance by Par & Euston justified reliance by Par & Euston or whether Par & Euston's administrative facility fees could be provided without an ASC license.

The Court finally notes that Par & Euston previously held the position that their claims for facility fees were dismissed along with the DAC Plaintiffs' claims for facility fees. Doc. 544 at 1 n.1, 19. Accordingly, it is hereby

---

[12] Par & Euston assert that "the best indication that Par/Euston performed as agreed is that all of the surgeries were indeed performed at the facility arranged for by Par/Euston." *Id*. at 40. Par & Euston also allege that expenses related to those services are related included in their tax returns. Id. at 33–34. And Par & Euston assert that another court has held that a jury could conclude that an insurer breached an implied contract based upon a course of prior approval and payments. *Id*. at 37–38 (citing *Fisher v. Blue Cross & Blue Shield of Texas, Inc.*, No. 3:10-CV-2652-L, 2015 WL 5603711, at *10 (N.D. Tex. Sept. 23, 2015)) (holding that a jury could infer that payments to the anesthesiologist and gynecologist who performed the surgery was consistent with a common understanding that the anesthesia equipment would also be covered)). *Id*. at 37–38.

**ORDERED** that United's Motion for Summary Judgment as to Plaintiffs Par and Euston, Docs. 659 & 660, is **GRANTED** as to Par & Euston's claims of negligent misrepresentation, breach of implied-in-fact contract, Texas Insurance Code violations, *quantum meruit*, and promissory estoppel. Having granted United's Summary Judgment on those claims, the Court need not consider United's assertions that Par & Euston lack standing or are barred by statutes of limitations.

### III. Par, Euston, and Dr. Cohen's Cross-Motion for Summary Judgment

Par & Euston and Dr. Cohen contend that "if the Court is at all inclined to grant summary judgment against Par/Euston statute of limitations grounds, then it ought also to grant summary judgment against United's fraud and money had and received causes of action . . . ." Doc. 662 at 2. Because the Court did not grant summary judgment against Par & Euston on limitations grounds, this Motion is moot. Accordingly, it is hereby

**ORDERED** that Par, Euston, and Dr. Scott Cohen's Motion for Leave to File Cross-Motion for Summary Judgment as to United's Counterclaims, Doc. 663, a Motion to Expedite Consideration of the Motion for Leave, Doc. 664, and the Cross-Motion for Summary Judgment, Doc. 662, are all **DENIED** as moot.

### IV. Conclusion

Accordingly, it is hereby

**ORDERED** that United's Motion for Summary Judgment as to Plaintiffs Par and Euston, Docs. 659 & 660, is **GRANTED** as to Par & Euston's claims of negligent misrepresentation, breach of implied-in-fact contract, Texas Insurance Code violations, *quantum meruit*, and promissory estoppel. Having granted United's Summary Judgment on those claims, the Court

need not consider United's assertions that Par & Euston lack standing or are barred by statutes of limitations. It is further

**ORDERED** that Par, Euston, and Dr. Scott Cohen's Motion for Leave to File Cross-Motion for Summary Judgment as to United's Counterclaims, Doc. 663, a Motion to Expedite Consideration of the Motion for Leave, Doc. 664, and the Cross-Motion for Summary Judgment, Doc. 662, are all **DENIED** as moot.

SIGNED at Houston, Texas, this 12th day of July, 2018.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE