IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAC SURGICAL PARTNERS P.A., *et al.*, | § |
| Plaintiffs, | § |
| VS. | § CIVIL ACTION NO. 4:11-CV-1355 |
| UNITED HEALTHCARE SERVICES, INC., *et al.*, | § |
| Defendants. | § |

## **MEMORANDUM & ORDER**

Before the Court is United Healthcare Services, Inc.'s Motion for Summary Judgment as to its Claims Against Par Surgical, PLLC and Euston Associates, PLLC (Doc. No. 705). Par Surgical, PLLC and Euston Associates, PLLC have not filed a timely response.

**I.    Background**

This Court's predecessor has written numerous opinions in this case, each of which included a thorough factual background section. This Court will reproduce only an abbreviated version of the pertinent facts in this case.

This case was originally filed in 2011 by several doctors who performed surgeries at the Palladium for Surgery ("Palladium"), an ambulatory surgical center ("ASC") located in Houston, Texas. These doctor-plaintiffs asserted that United Healthcare Services, Inc. ("United") represented that it would pay $20 million in facility fees for surgical operations performed at the

1

Palladium. In response, United filed crossclaims, asserting that the plaintiffs had committed fraud by misrepresenting the facility fees on claims forms submitted to United.

At this stage in the case, there are two remaining counter-defendants: Par Surgical, PLLC ("Par") and Euston Associates, PLLC ("Euston"). United and Dr. Scott Cohen (former owner of Par and Euston) reached a settlement agreement just after the United moved for summary judgment. (Doc. No. 707).[1] United maintains its counterclaims against these counter-defendants and has moved for summary judgment against Par and Euston. In its Motion for Summary Judgment, United asks the Court to grant judgment in its favor as to its fraud claims, its money had and received claims, and its request for declaratory judgment.

## II.     Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all

---

[1] DAC Surgical Partners have previously moved for summary judgment on United's counterclaims. This Court's predecessor found that a genuine issue of material fact remained. Now, United moves for summary judgment on its own counterclaims asking that judgment be granted in its favor.

2

reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. Local Rules 7.3 and 7.4 of the Southern District of Texas state that a response to a motion will be submitted to the judge within twenty-one days after filing and that the failure to respond will be taken "as a representation of no opposition." Rule 7.4(a) plainly states that such responses must be filed by the submission date, which in this case, has passed without any response from the non-movants.

Therefore, the local rules would allow the Court to grant Defendants' motion as it should be considered unopposed. However, the Fifth Circuit has explained that "although we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (first citing *Johnson v. Louisiana*, 757 F.2d 698, 707–09 (5th Cir. 1985); then citing *Ramsey v. Signal Delivery Serv.*, 631 F.2d 1210, 1213–14 (5th Cir. 1980)). In other words, where a party does not respond to a summary judgment motion, such failure does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id.* Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Consequently, this Court will analyze the claim's validity despite the lack of response.

3

### III. Analysis

#### 1. Fraud

United moves the Court to grant summary judgment in its favor on its fraud claim against Par and Euston. United argues that its evidence demonstrates as a matter of law that Par and Euston committed fraud by making certain misrepresentations in the claims that they submitted to United. Specifically, United argues that its evidence demonstrates that Par and Euston represented that they were licensed ASC facilities when they were actually single-member entities or "shell companies" formed by Dr. Cohen for the sole purpose of submitting fraudulent facility fee claims.

By way of background, many surgical medical claims involve two types of charges—a facility fee, paid to the hospital or ASC and a physician fee, paid to the doctor. (Doc. No. 541 at 9). Here, Par and Euston had a "unique" way of allocating the facility fees. Par and Euston were owned by doctors who performed surgeries at Palladium. Par and Euston were not licensed ASCs. *See* Tex. Health & Safety Code §243.003 (requiring that all ASC facilities be licensed). Palladium, on the other hand, held an ASC license. As a result, Par and Euston contracted with Palladium for surgical facility services during the surgeries their doctor-owners performed. The contracts Par and Euston each signed with Palladium included a facility use agreements and a billing services agreements.[2] (Cohen Depo. Doc. No. 705, Ex. 3 at 113). Under the terms of these agreements, Par and Euston and Palladium agreed that Par and Euston would pay Palladium: (1) 45% of Par and Euston's net monthly revenue to "use" Palladium's space, equipment, and employees; and (2) 5% of Par and Euston's net monthly collected revenue for Palladium to provide "billing services" as

---

[2] As this Court's predecessor found in its prior order: "Under the [use] agreements, Palladium served as [Par and Euston's] agent for all billing and collection matters related to the facility fees. Doc. 489-4. Palladium was given access to [Par and Euston's] bank accounts, was appointed as their 'true and lawful agent and attorney-in-fact,' and was granted 'special power of attorney and appointment, to deposit in [Par and Euston's bank accounts] all [facility fees] collected' on behalf of [Par and Euston], by Palladium. *Id.* ¶ 3.5." (Doc. No. 541 at 10–11).

each of the companies' "sole and exclusive agent," for among other things, submitting facility fee claims to insurers such as United. (Doc. No. 541 at 10). After the facility fees were collected by Par and Euston from insurers, such as United, they paid Palladium 50% of the collected amount (45% for use of the facility plus 5% for billing services) and retained the remaining 50%, which then passed through Par and Euston to their doctor owners. (Kovnat Depo. Doc. No. 486, Ex. 30 at 4:25–6:24; Moore Depo. Doc. No. 487, Ex. 12 at 21:14–20). United alleges that Par and Euston concealed their fee-splitting arrangement with Palladium by submitting fraudulent claims.

United provides evidence that Par and Euston misrepresented facility fees on the claims forms they submitted to United by representing that Par and Euston were licensed facilities when they were really single-member entities or "shell companies" (formed by the counter-defendant doctors for the sole purpose of submitting fraudulent facility fee claims) and by misrepresenting the amount of facility fees Palladium was due. United also provides evidence that it would have denied the facility fee claims pursuant to coverage limitations in its insurance policies had it known the facility fees were passing through Par and Euston to Dr. Cohen.

Under Texas law, to prevail on a fraud claim, a plaintiff must prove that (i) the defendant made a misrepresentation that was false; (ii) the misrepresentation was material (iii) the defendant knew the representation was false or "made it recklessly as a positive assertion without any knowledge of its truth"; (iv) the defendant intended to induce the plaintiff to act upon the representation; and (v) the plaintiff "actually and justifiably relied upon the representation and thereby suffered injury." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); *see also John v. Marshall Health Servs., Inc.*, 91 S.W.3d 446, 450 (Tex. App.—Texarkana 2002, pet. denied) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). A misrepresentation is material if "a reasonable

person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.)).

### i. Par and Euston's Misrepresentations

United provides uncontroverted evidence that Par and Euston made false misrepresentations on the bills and claims submitted to United. The bills that Par and Euston submitted to United indicated that Palladium was the provider of the facility services while Par and Euston were merely the billing agents or representatives for Palladium. (Chalupsky Depo. Doc. No. 705, Ex. 17 at 445:16–448:2; Cohen Depo. Doc. No. 705, Ex. 3 at 150–51, 168; Randall-Tillis Depo. Doc. No. 705, Ex. 18 at 161:18–24). Par and Euston also listed their own tax identification numbers on the bills rather than listing the tax identification number of Palladium, the licensed entity. (Chalupsky Depo. Doc. No. 705, Ex. 17 at 446:19–25). These representations were false because it misrepresented which entity was actually seeking facility fees; that is, Par and Euston made it appear as though only Palladium was seeking payment when in reality, Palladium only received half of the requested amount. (*Id.*). The doctor who owned Par and Euston (Dr. Cohen) had already collected his physician fees, but using the surreptitious billing method described above, he would also keep 50% of the facility fees. (*See* Doc. No. 541 at 37–38).

Additionally, United provides evidence that these bills misrepresented the actual amount of facility fees since Palladium and Par/Euston split the facility fees fifty-fifty. United provides copies of the "Overpayment Demand" letters it sent to Par and Euston, which indicates that if Par and Euston—who provided no services and were unlicensed—were keeping 50% of the fees that United paid, then the dollar amount represented on each claim submission was twice what the

6

actual charges should have been. (Doc. No. 705, Exs. 2, 4; Chalupsky Depo. Doc. No. 705, Ex. 17 at 453:6–16). Par and Euston have not denied this facility fee-sharing, but instead argue that they were entitled to the payment under the use agreement they signed with Palladium. As the Court explains below, this use agreement was prohibited by law and therefore cannot be used as a defense.

*ii. Materiality*

Next, Par and Euston's misrepresentations on these bills were material because Texas law requires that all ASC facilities be licensed. United's healthcare plans also require facilities to be licensed. (Doc. No. 705, Exs. 20 at 34, 72; 24). Since Par and Euston were unlicensed, they were not entitled to receive facility fee payments from United. United has averred that had it known that it was paying unlicensed entities for facility services, United would not have paid the claims. (Chalupsky Depo. Doc. No. 705, Ex. 17 at 458:21–459:4). Accordingly, Par and Euston's misrepresentations were material.

*iii. Knowledge of Falsity or Reckless Disregard for the Truth*

The evidence also demonstrates that Par and Euston knew that the misrepresentations were false. Par and Euston appear to make (at least) two conflicting representations: (1) During the course of this litigation, they have argued that they were entitled to the facility fees because they were service providers, but (2) the bills and claim forms submitted to United indicate that Palladium was the service provider and Par and Euston were merely its billing agents and/or representatives. (*See* Chalupsky Depo. Doc. No. 705, Ex. 17 at 445:16–448:2). Based on the evidence in the record, Par and Euston do not appear to have provided any services, had any employees, or held a valid ASC license. Par and Euston's tax returns show no facility expenses or ASC operating costs or assets. (Doc. No. 705, Exs. 12, 13). Based on this alone, it is unclear why

7

Par and Euston could have believed they were entitled to payment from United. According to Dr. Cohen, Palladium would provide the services (including space, employees, equipment, and utilities) and in exchange, Par and Euston would pay Palladium a "use fee." (Cohen Depo. Doc. No. 705, Ex. 3 at 51:15–52:18). Even so, Par and Euston placed their names on the claims forms as the payee, all the while knowing that under Texas law, unlicensed entities (such as they were) cannot collect facility fees. (Kramer Depo. Doc. No. 705, Ex. 11 at 239:18–240:15). Additionally, Texas law prohibits ASC licenses from being leased or assigned. Tex. Health & Safety Code § 243.003 (prohibiting the assignment or transfer of an ASC license). Accordingly, the use agreement that Par and Euston each had with Palladium was illegal as a matter of law. The evidence indicates that Par and Euston were at least aware that United was more likely to pay their claims if they identified a licensed facility (Palladium) as the service provider rather than writing in their own names. (*See* Randall-Tillis Depo. Doc. No. 705, Ex. 18 at 161:18–24).

As further evidence that Par and Euston had knowledge of falsity, United highlights Dr. Cohen's testimony regarding the compensation models for Par and Euston compared to his other ASCs. Dr. Cohen has testified that he (through Par and Euston) would receive a 50% commission on the facility fee payment (with the other 50% going to Palladium). (Cohen Depo. Doc. No. 705, Ex. 3 at 137, 141). This is unlike the commission that he received on his other ASCs, which was based on his "pro rata ownership interest" in the facility, not on the volume and value of his referrals. (*Id.* at 26, 137). This difference further demonstrates that Dr. Cohen—and therefore Par and Euston—were aware that the bills that they sent to United contained misrepresentations.

### iv. Justifiable Reliance

Finally, United has demonstrated that it justifiably relied on Par and Euston's misrepresentations. Justifiable reliance is established when a claimant demonstrates that it "took

an action or failed to take an action, which caused [it] harm" and that this act or omission was "based on the alleged misrepresentation." *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 16 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). In measuring "justifiability," courts analyze the likelihood of *actual* reliance in light of the claimant's "individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (quoting *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 (5th Cir.1990)). In the case at hand, the claimant, United, has provided uncontroverted evidence that it paid Par and Euston's bills upon reliance of the companies' representations about the services rendered (and the facility that rendered the services). United receives over a million claims from healthcare providers on a daily basis. (Chalupsky Depo. Doc. No. 705, Ex. 17 at 415:20–416:11, 237:23–238:4). United also provides testimony that it relies on the healthcare providers to manage their own licensure, engage in lawful activities, and submit truthful claims because it is not feasible for United to check up on every claim it receives from every healthcare provider. (*See id.*). United has also provided testimony demonstrating that the bills that Par and Euston submitted did not appear fraudulent at first glance. (*Id.* at 445:12–463:20). Indeed, it was not until United performed its investigation that it discovered Par and Euston's billing scheme. (*Id.* at 372:8–21). Thus, although it is clearly a sophisticated party, in this context, it is justifiable that United relied on Par and Euston's representations for billing purposes.

    *v. Injury to the Claimant*

United has also provided evidence of damages. In their interrogatories, Par and Euston state that United paid them a total of $677,247.12 in billing fees (that is, $139,480.46 to Par and

$548,766.66 to Euston). (Doc. No. 705, Exs. 2, 4). United has provided evidence that these two figures represent the amount that United paid Par and Euston.[3] (*Id.*).

### 2. Money Had and Received

Next, United asserts a counterclaim for money had and received to recover the facility fee amounts paid to Par and Euston. This claim depends upon United's fraud counterclaim discussed above. "To prove a claim for money had and received, a plaintiff must prove a defendant holds money that belongs to the plaintiff in equity and good conscience." *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951). United has provided evidence that Par and Euston received money that belongs to United. (Doc. No. 705, Exs. 2, 4). As the Court explained in its fraud analysis above, the amount that United overpaid based on Par and Euston's fraudulent misrepresentations belongs to United "in equity and good conscience." *Staats*, 243 S.W.2d at 688. Since this Court has found that Par and Euston are liable for fraud, this Court will also grant summary judgment in favor of United on its money had and received claim.

### 3. Declaratory Judgment

United also requests that the Court enter a judgment declaring that Palladium's Use Agreements and Billing Services Agreements are void as a matter of law because they violate Tex. Health & Safety Code § 243.003, 25 T.A.C. § 135.23, and Tex. Occupation Code §§ 102.001, 102.051, and 165.155. This Court agrees. As mentioned above, Texas law requires that all ASCs be licensed and prohibits ASC licenses from being leased or assigned. Tex. Health & Safety Code § 243.003. Palladium was the only license holder in this arrangement. Par and Euston entered into

---

[3] Based on the evidence presented to this Court, it is clear that some amount of facility fees would have been paid, regardless of the misrepresentation. Thus, as a matter of law, United is only entitled to 50% of the total amount paid (in other words, United is entitled to the 50% that was paid to Par and Euston but not the 50% that went to Palladium, a licensed ASC). That having been said, it is not entirely clear whether the amount listed above represents the 50% "kickback" that Par and Euston received, or whether the correct figure is 50% of that amount. (Doc. No. 705, Ex. 2, 4).

a use agreement with Palladium and used its license to receive payments from insurance companies. Accordingly, the Court finds that the use agreement that Par and Euston each had with Palladium was illegal as a matter of law.

**IV.  Conclusion**

For the foregoing reasons, United's Motion for Summary Judgment is **GRANTED**. It is so ordered.

Signed at Houston, Texas, this 19th day of July, 2019.

Andrew S. Hanen
United States District Judge